**STARK, Plaintiff-Appellant, v. TESTO, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24271. Decided February 20, 1958.

McDonald, Hopkins, Hood & Hardy, for plaintiff-appellant.
Albert B. Lefton, for defendant-appellee.

## OPINION

Per CURIAM:

This appeal comes to this court on questions of law and fact from a judgment entered by the court without the intervention of a jury in the Common Pleas Court of Cuyahoga County. The court found and entered judgment for the defendant on plaintiff's amended petition and for the plaintiff and against the defendant on his cross-petition.

The plaintiff filed his amended petition in which he alleges that the defendant sold plaintiff a one-half interest in his machine tool business for $35,000, $16,000 in cash and the balance of $19,000 by note payable in one year with interest at four per cent. The plaintiff alleges that to induce him to purchase said one-half interest, the defendant knowingly and fraudulently made certain untrue representations as to the volume of business, the inventory, and some of the customers to whom the defendant was selling "large amounts of merchandise." It is further alleged that defendant represented and agreed that if at any time after the transaction was consummated, the plaintiff should become "dissatisfied with the investment, defendant would repurchase" the plaintiff's interest in the business for the same price paid therefor. (There is no mention of this allegation in the partnership agreement introduced into evidence during trial.) Plaintiff alleges that he entered into the business January 2, 1954, and during the month of January discovered defendant's statements about the business made to induce the plaintiff to became a partner (an undivided forty per cent owner of the business) were untrue and on many occasions he offered to return his interest in the business and demanded the return of the purchase price. That on June 1, 1954, the plaintiff renewed his demands, that such demands were refused, the defendant stating that there had been a loss of from $14,000 to $16,000 during the first five months of 1954, of which plaintiff should stand his share. Plaintiff alleges that, relying on such representations, he agreed to and did sell his interest in the business to the defendant for $10,000 cash and the return of the $19,000 note. The plaintiff also alleges that the representations made upon which he relied in reselling the business to the defendant were false and untrue to defendant's knowledge and were made for the purpose of deceiving him and pursuant to a preconceived plan to defraud and cheat him whereby he was defrauded of $6,000, for which amount he asks judgment.

The answer of the defendant admits the sale of an interest in the business for the price alleged by the plaintiff; alleges that before the plaintiff became a partner, he spent about three weeks working therein to determine for himself the amount of the inventory, the volume of business and the like and that it was only after his personal investigation that the plaintiff entered into the partnership agreement of January 2, 1954. The defendant further alleges that the said articles of partnership contain all of the terms of their agreement and the allegation that defendant would repurchase plaintiff's interest in the partnership if plaintiff was not satisfied is not true and that plaintiff entered into such agreement "with full knowledge and disclosure of all the facts of the said business."

It is also alleged that plaintiff, acting as a partner between January 2, 1954 and June 4, 1954, had full opportunity to examine the books, inventory, assets, liabilities, profits and losses, and was fully advised of his own knowledge of its economic value. That on June 4, 1954, the plaintiff entered into a written agreement to resell his interest in the business for $29,000, $10,000 in cash and the balance by the return of

his note for $19,000, given to the defendant by the plaintiff when he purchased an interest in the business January 2, 1954.

As a part of the written agreement of dissolution of partnership of June 4, 1954, it was provided:

"Each of the parties hereto does hereby release and forever discharge the other from all claims and demands whatsoever, in any manner arising under the Articles of Co-Partnership hereinbefore referred to (Agreement of January 2, 1954), or in any manner growing out of the business of said firm.

"And the said Alfred A. Stark hereby covenants and agrees that the consideration of Ten Thousand Dollars ($10,000.00) is hereby accepted in full satisfaction of the purchase price and hereby agrees to cancel and release any and all debts and obligations between the parties hereto, including the sum of Six Thousand Dollars ($6,000.00) paid over and above Ten Thousand Dollars ($10,000.00) by said Alfred A. Stark to Edward D. Testo at the time of entering into the partnership agreement."

The defendant then alleges that by reason of such release provision of the dissolution agreement of June 4, 1954, the plaintiff released all claims alleged in his petition.

The defendant then set forth four causes of action in his counter claim. Upon trial the court found for the plaintiff on each of these causes of action and no appeal has been taken from such judgment so that that part of the case is concluded.

The plaintiff's reply to defendant's answer admits that the articles of dissolution contained the release provisions as set out in the answer, the paragraph of the reply being as follows:

"Plaintiff admits that between January 2, 1954 and June 4, 1954, he was a partner with defendant; admits that on June 4, 1954 plaintiff and defendant entered into a written agreement for the dissolution of said partnership, which agreement contained among other things the two paragraphs quoted in defendant's answer; admits that he received the sum of $10,000 cash and return of his note upon the dissolution."

Plaintiff denies his knowledge of the condition of the business or the opportunity to examine the records, either prior to the articles of partnership of January 2, 1954 or at the time of the dissolution thereof on June 4, 1954.

It is undisputed from the allegations of the pleadings, as quoted, that a full release from all obligations under the contract of dissolution was agreed to by the parties. We are, therefore, met at the outset with the obligation of the plaintiff to seek rescission of the release before attempting to seek relief on claims coming within the terms of the release. There is no claim by the plaintiff, nor does he plead facts to support a claim, that the release as set out in the answer was void ab initio. No claim of fraud in the factum is here even suggested.

"In 35 O. Jur., paragraph 52, page 292, it is said:

"'* * * While a different rule has been adopted in some jurisdictions, it seems to be thoroughly established in Ohio that, in the case of a release which is merely voidable, the plaintiff is obliged to procure its rescission before proceeding with his action on his original claim, since

it is considered that such release, until it is set aside, constitutes an effective bar to such action and that it is not permissible, when the release is brought into the case for the first time by the defendant in his answer, for the plaintiff to seek its rescission by setting up in his reply the facts which would render it voidable. It is permissible, however, to seek the rescission of such a release in the same action in which recovery is asked on the original claim by setting forth in the petition the facts which render it voidable and by alleging, in addition, such restoration or tender of the benefits received by the plaintiff thereunder as entitles him to the rescission and cancellation thereof. In that case the judge, sitting as a chancellor to administer equitable relief, will first determine the plaintiff's right to a rescission of the release, and, in the event such equitable relief is granted, the trial may then proceed upon the original claim, unaffected by the release. * * *"

From the analysis of the plaintiff's petition, it is evident that no attempt was made by the plaintiff to seek to set aside the provisions of the dissolution agreement which released both parties from all claims growing out of the transactions between the parties as set out in the petition. The plaintiff's action, therefore, upon the admissions of the pleadings, cannot be maintained until the release above set out is set aside in a proceeding in chancery, either set out in the action seeking damages or otherwise under the rule set forth in Ohio Jurisprudence above quoted.

Even if such rule requiring the setting aside of a release before seeking damages on a claim covered by the release were not directly here presented, we would, upon the record, be called upon to affirm the judgment entered by the trial court. There is credible evidence clearly supporting the judgment of the trial court for the defendant and against the plaintiff on his amended petition.

It must also be observed that the principal claim of the plaintiff is for money only and, therefore, an action at law. This appeal should, therefore, have been on questions of law. Since no objection was presented to proceeding on appeal on questions of law and fact, we are authorized to enter the same decree and judgment as would be required had the appeal been on questions of law. See **Drake v. Tucker, 83 Oh St 97, 93 N. E. 534.** where the court in the syllabus said:

"Whether a cause in which an appeal has been taken to the circuit court from the judgment of the court of common pleas is appealable, is a question which cannot be effectively made except by a motion to dismiss the appeal interposed in the circuit court before the trial in that court."

Decree and judgment is, therefore, entered for the defendant on plaintiff's petition.

Exceptions noted.

SKEEL, PJ, HURD and KOVACHY, JJ, concur.